DECISION
Plaintiff-appellant, Horace Mann Insurance Companies ("Horace Mann"), appeals from the Franklin County Court of Common Pleas' declaratory judgment in favor of defendants-appellees, Carl Bradwell, Stephen and Patricia Shiprak, Sharon Green and Automobile Club Insurance Company.
This insurance coverage dispute arises out of an automobile accident. On December 19, 1998, Bradwell drove his Chevrolet Malibu off the road, struck a bank of gas meters and crashed into the brick wall of a residential condominium. At the time of the accident, Bradwell was insured under a Horace Mann policy. The policy excluded from coverage "any damages * * * caused intentionally by the insured." On the basis of this exclusionary language, Horace Mann denied coverage for the damages caused by this accident and filed this declaratory judgment action seeking a determination that it is not obligated to defend or indemnify Bradwell for damages caused by the accident.
Bradwell and several police officers testified at the bench trial. Bradwell testified that he was driving northbound on Cleveland Avenue shortly after 4:00 a.m. on December 19, 1998. Although the speed limit in this residential area was thirty-five miles per hour, Bradwell admitted that he was driving at approximately fifty-five to sixty miles per hour. Bradwell stated that he observed flashing police lights in his rearview mirror, but he did not pull over because he did not think that the police were pursuing him. Bradwell continued through several intersections. He then observed several cruisers behind him with flashing lights, but he still did not pull over. He testified that his car ran out of gas and he was unable to steer, causing him to lose control and run off the road.
Bradwell admitted that he was driving without a valid license. He denied that he was driving under the influence of alcohol, although he admitted that he had a sip of beer earlier in the evening. He testified that the police asked him to take a blood alcohol test but he refused because of his religious objections to blood tests. As a result of this incident, Bradwell was convicted of reckless operation, fleeing and eluding police officers and disorderly conduct.
Bradwell admitted that he realized at some point that the police were chasing him, and he contended that he would have pulled to the curb if the car had not run out of gas. He testified that he did not intend to be involved in a car accident or cause any damage.
Officer Joseph McCoy testified that he was driving southbound on Cleveland Avenue when Bradwell's car veered left of center at a high rate of speed. McCoy stated that he had to swerve to avoid being hit by Bradwell. McCoy turned around, turned on his flashing lights and closed the distance on Bradwell's car. He testified that he was following Bradwell at speeds in excess of seventy miles per hour, and he saw Bradwell run a red light. According to McCoy, the pursuit lasted approximately four minutes and he followed Bradwell for roughly four and one-half miles. McCoy testified that he was convinced that Bradwell was fleeing from his chase. It did not appear to McCoy, however, that Bradwell was trying to hit the building; rather, McCoy testified, it appeared that Bradwell lost control of his car.
Officer Paul Scowden testified that he joined in the pursuit of Bradwell. According to Scowden, Bradwell's car cut across five lanes, jumped a curb and went up a ten foot embankment before striking the gas meters and the brick wall. He testified that, given the manner in which Bradwell was driving, there was a "good probability" that Bradwell would end up in a crash. Scowden testified that he has been involved in ten or fifteen car chases during his career and that two of those chases resulted in accidents.
Officer Robert Newbold also joined in the pursuit. He testified that he smelled alcohol on Bradwell at the accident scene but that, because Bradwell had to be maced, Newbold could not give Bradwell a field sobriety test. Newbold testified that he had been involved in thirty to fifty high-speed pursuits during his law enforcement career. Of those chases, only "[o]ne or two, very few" resulted in an accident.
In rendering its decision, the trial court determined that "[a]lthough defendant Bradwell may have intended to flee from police, plaintiff has not shown that Bradwell intended to crash the vehicle." The trial court concluded that, pursuant to the standard enunciated by the Ohio Supreme Court in Buckeye Union Ins. Co. v. New England Ins. Co. (1999),87 Ohio St.3d 280, Bradwell's actions were not intentionally injurious.
On appeal, Horace Mann asserts the following assignments of error:
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN APPLYING THE CASE OF BUCKEYE UNION INS. CO. V. NEW ENGLAND INS. CO. (1999), 87 OHIO ST.3d 280 TO THE WITHIN CASE.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN REFUSING TO FOLLOW THE CLEAR PRECEDENT OF NATIONWIDE MUT. INS. CO. V. FINKLEY (SUMMIT, 1996), 112 OHIO APP.3d 712, WHICH WAS FOLLOWED AND ADOPTED BY THIS COURT IN WESTFIELD INS. CO. V. BLAMER (FRANKLIN APP. SEPTEMBER 2, 1999), NO. 98 AP-1576, 1999 OHIO APP. LEXIS 4098.
 THIRD ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN FAILING TO CONCLUDE THAT WHERE AN INSURED WILLFULLY AND PURPOSEFULLY ATTEMPTS TO ELUDE POLICE OFFICERS IN A HIGH SPEED AUTOMOBILE CHASE THROUGH AN URBAN AREA IN DISREGARD OF TRAFFIC CONTROL DEVICES, SUCH ACTIONS ARE SUBSTANTIALLY CERTAIN TO RESULT IN DAMAGE OR INJURY.
 FOURTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN FAILING TO FOLLOW THE CLEAR EXCLUSIONARY LANGUAGE OF THE APPLICABLE CONTRACT OF INSURANCE.
For the reasons that follow, we affirm the judgment of the Franklin County Court of Common Pleas.
The appropriate standard of review is whether the decision of the trial court is contrary to law. We will not disturb the trial court's judgment if it is "supported by some competent, credible evidence going to all the essential elements of the case." C.E. Morris Co. v. Foley ConstructionCo. (1978), 54 Ohio St.2d 279, syllabus. "`If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment.'"Estate of Barbieri v. Evans (1998), 127 Ohio App.3d 207, 211.
In its first assignment of error, Horace Mann contends that the trial court erred in relying on Buckeye Union. In Buckeye Union, the Ohio Supreme Court considered whether an insurance company's malicious failure to settle a tort case against its insured constituted an uninsurable intentional tort. Buckeye Union, at 283. The court concluded that an insurer can be guilty of maliciously failing to settle a tort case against its insured without necessarily committing the type of intentional tort that is uninsurable, as a matter of public policy, under Ohio law. Id. at 283.
Horace Mann argues that the trial court erred in relying on BuckeyeUnion because the facts surrounding the car accident in the instant matter are "substantially more serious" than the insurance contract interpretation scenario in Buckeye Union. According to Horace Mann,Buckeye Union "has absolutely no application whatsoever to the case at bar." We disagree. As Buckeye Union is a recent pronouncement by the Ohio Supreme Court on the issue of insurance coverage exclusion for intentional conduct, we conclude that the trial court properly relied onBuckeye Union.
The Buckeye Union decision is instructive on the instant matter for several reasons. In reaching its conclusion, the Buckeye Union court stated that the inquiry into intent usually turns on a factual determination of "[w]hether the insured had the necessary intent to cause injury." Buckeye Union, at 283. The Buckeye Union court also noted that "[i]n very limited instances, this court has held that the intent to injure can be inferred as a matter of law under certain circumstances."Id. For example, the court noted, intent to injure has been inferred from a defendant's criminal conviction for aggravated murder because an intent to cause death is an essential element of that crime. Id. Similarly, intent to injure has been inferred from an insured's guilty plea to sexual molestation charges because the act of sexual molestation is inextricably intertwined with the harm. Id. The Buckeye Union court concluded that intent to injure could not be inferred from an insurance company's failure to settle an insurance claim because that act, unlike murder or molestation, is not "intentionally injurious by definition."Id. at 284.
In the instant matter, the trial court concluded that "[f]leeing police in a high-speed chase, although illegal, is not an act that is `intentionally injurious by definition' under the standard set forth inBuckeye Union." The trial court, therefore, declined to infer intent as a matter of law. The trial court further concluded that, given the facts of the case, Bradwell did not cause an intentional injury under the standard articulated in Buckeye Union. Although the factual circumstances are different in Buckeye Union, the Ohio Supreme Court's pronouncement that the inquiry into intent turns on a factual analysis unless the act and the harm "are so intertwined" that "to intend the act is also to intend the harm" is instructive. See Buckeye Union, at 284. The trial court did not err in relying on the reasoning set forth in Buckeye Union.
Horace Mann also argues that Bradwell's actions were intentionally injurious as a matter of law. We disagree. Although Bradwell may have intended to break traffic laws and evade the police, he did not necessarily intend to cause damage in a traffic accident. In contrast to the cases involving murder and sexual molestation, where the act itself necessarily caused the disputed injury, speeding and reckless driving do not necessarily cause property damage.
Horace Mann's first assignment of error is overruled.
By its second assignment of error, Horace Mann contends that the trial court erroneously failed to follow Nationwide Mut. Ins. Co. v. Finkley
(1996), 112 Ohio App.3d 712; and Westfield Ins. Co. v. Blamer (Sept. 2, 1999), Franklin App. No. 98AP-1576, unreported. Horace Mann argues that, even though the Finkley and Blamer decisions preceded Buckeye Union, they are still viable law. Horace Mann contends that, pursuant to Finkley andBlamer, an insured who willfully and purposefully attempts to elude police in an automobile chase is substantially certain to cause injury, triggering an insurance policy's exclusion for intentional damages.
We need not decide whether Finkley and Blamer are still viable law in the wake of Buckeye Union, because we conclude that neither Finkley norBlamer is dispositive of the instant action.
In Finkley, the Summit County Court of Appeals concluded that an insured was not entitled to coverage under an insurance policy that excluded damage "`caused intentionally by or at the direction of aninsured, including willful acts the result of which the insured knows orought to know will follow from the insured's conduct.'" Finkley, at 715 (quoting policy language; emphasis added). In Finkley, a teenager who did not yet have a driver's license stole his grandmother's car and led police on a high-speed chase throughout Akron, causing an accident when he failed to stop at a stop sign. Id. at 714. The Finkley court concluded that the teenager "willfully committed acts which he, at the very least, ought to have known were substantially certain to cause injury." Id. at 715-716.
In contrast to the policy in Finkley, the exclusionary language in the policy in the instant action only applies to damages "caused intentionally by the insured." It does not exclude from coverage the damage an insured ought to know will follow from his willful acts. Finkley, therefore, is simply not controlling on the exclusionary language at issue.
Blamer is likewise inapposite. In that case, the court concluded that damage to a residence that resulted when an insured poured lighter fluid on a sofa and ignited the sofa with a lighter was not covered because it was not an "occurrence" under the terms of the policy. Blamer, at 12. That policy defined an "occurrence" as "an accident" that results in damage. Id. at 2-3. The Blamer court concluded that the "act of setting the couch on fire was not itself an accident," and it therefore held that "as a matter of law * * * appellees' damages did not result from an `occurrence.'" Id. at 6, 12. As the instant matter does not involve an interpretation of accident or occurrence, Blamer is not instructive.
Horace Mann's second assignment of error is overruled.
In its third assignment of error, Horace Mann contends that the trial court erred in concluding that Bradwell's actions were not substantially certain to result in damage or injury. Because we conclude that the trial court's determination was supported by competent, credible evidence, we disagree.
Testimony from the police officers demonstrated that, although Bradwell's actions could have resulted in a traffic accident, the odds were against it. Officer Scowden testified that he had been involved in ten or fifteen car chases, and only two had resulted in crashes. Officer Newbold testified that, of the thirty to fifty high-speed pursuits in which he has participated during his career, "[o]ne or two, very few" resulted in an accident. Bradwell testified that he did not intend to cause an accident. In light of this evidence, we overrule Horace Mann's third assignment of error.
In its fourth assignment of error, Horace Mann contends that, for the reasons it argued in its preceding assignments of error, the trial court erred by failing to apply the exclusionary language in the policy contract. For the reasons we have already discussed, the trial court's decision is supported by competent, credible evidence, and is not contrary to the law. Horace Mann's fourth assignment of error is therefore overruled.
For the foregoing reasons, Horace Mann's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT, P.J., and DESHLER, J., concur.