In re Richard C. CONFER, Jr., Debtor.

Terry and Nancy Brixey, Plaintiffs,

v.

Richard C. Confer, Jr., Defendant.

Bankruptcy No. 00–30338.
Adversary No. 00–3210.

United States Bankruptcy Court,
S.D. Ohio,
Western Division at Dayton.

April 11, 2002.

Joseph R. Matejkovic, Middletown, OH, for the Brixeys.

Richard C. Confer, Jr., Dayton, Ohio, pro se.

Ruth Slone–Stiver, Dayton, Ohio, trustee.

## DECISION AND ORDER DENYING PLAINTIFFS' MOTION TO STRIKE AND DECISION AND ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

WILLIAM A. CLARK, Bankruptcy Judge.

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334, and the standing General Order of Reference in this District. This proceeding constitutes a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I).

This matter is before the court on Plaintiffs' Motion for Summary Judgment [Adv. Doc. # 26–1]; Defendant's Response [Adv. Doc. # 29–1]; and Plaintiffs' Motion to Strike Defendant's Response to Motion for

Summary Judgment or, in the Alternative, Reply Thereto [Adv.Doc. # 30–1].

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff–Creditors, Terry and Nancy Brixey (the "Brixeys"), request summary judgment against the Debtor–Defendant, Richard C. Confer, Jr. (the "Debtor"), on their complaint to determine the dischargeability of a debt arising from a default judgment rendered against the Debtor. The Brixeys assert that the debt constitutes a "willful and malicious injury" and is nondischargeable under 11 U.S.C. § 523(a)(6). In addition, the Brixeys request the court strike the Debtor's untimely response to their motion for summary judgment.

The debt at issue is related to a state court lawsuit initiated, not by the Brixeys, but by the Debtor against the Brixeys, for libel and defamation. [Adv.Doc. # 15–1 and attached state court documents.] In the complaint, the Debtor asserted that the Brixeys made false claims that the Debtor had improperly requested the Brixeys' credit history. *Id.* The Brixeys filed a counterclaim against the Debtor [Adv.Doc. # 26–1, attached copy of counterclaim.] In the counterclaim, the Brixeys asserted that the Debtor did attempt to improperly obtain their credit history while he worked for Three Star Mortgage. *Id.*

According to the allegations in the counterclaim, the Brixeys learned of the Debtor's improper actions after they obtained their credit report in 1997 and discovered that someone from Three Star Mortgage had made an inquiry into their credit history. *Id.* At that time, the Brixeys had no relationship with Three Star and the only person they knew who worked at Three Star was the Debtor. *Id.* They knew the Debtor because he participated with the Brixeys' children in a community sports program. *Id.* Through that program, the Brixeys believed that the Debtor had access to personal information that could be used to obtain their credit history. *Id.*

The counterclaim filed by the Brixeys against the Debtor in state court contained two causes of action. *Id.* The first was for a willful or negligent violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* [*Id.*, ¶¶ 8–11.] As a second cause of action, the Brixeys asserted a tort claim of an invasion of privacy claiming that the credit inquiry was an intrusion into their seclusion, private credit history and financial affairs [*Id.* ¶¶ 12–15.] They argued that "[a]s a result, Defendants reasonably believe that Plaintiff [Debtor] has intentionally, willfully, or negligently invaded their privacy, and is therefore liable to them for … damages …." [*Id.* ¶ 15.]

Because of apparent neglect on the part of the Debtor's attorneys, the Debtor did not timely answer the Brixeys' counterclaim. [Adv.Doc. # 15–1 and attached state court documents.] Thus, in October of 1999, the state court granted default judgment to the Brixeys on their counterclaim. [Adv.Doc. # 26–1, attached copy of entry granting judgment on counterclaim.] The default judgment included the words:

> All of the allegations set forth in the counterclaim are deemed true as if so found by this Court…. The issue of damages due from the Plaintiff to Defendants shall be addressed at a hearing on that issue to be scheduled by the Court….

*Id.*

The Debtor's attorneys filed a motion to vacate the default judgment based on excusable neglect, but the state court overruled the motion. [Adv.Doc. # 15–1 and attached state court documents.] The

Debtor then filed for bankruptcy protection on January 31, 2000.

After the bankruptcy filing, this court granted relief from the automatic stay so that the parties could return to state court to determine the amount of damages owed on the default judgment. [Bankr.Case No. 00–30338, Doc #44–1.] The parties entered an agreed judgment entry to settle the issue. [Adv.Doc. #15–1 and attached state court documents.] They settled the counterclaim for $9,000.00, $2,000.00 of which was paid soon after by a check drawn on the firm account of the Debtor's attorneys. *Id.*

In September, 2001, the Brixeys filed a motion to disqualify the Debtor's counsel in this bankruptcy noting the conflict of interest created by the attorneys' possible malpractice which caused a default judgment to be rendered against the Debtor. [Adv.Doc. #15–1.] The firm withdrew as counsel for the Debtor. [Adv.Docs. #19–1 and 23–1.] After the firm's withdrawal, the Debtor filed a motion to represent himself in this adversary proceeding. [Adv.Doc. #25–1]

On January 2, 2002, the Brixeys filed their motion for summary judgment in the adversary proceeding asserting that no dispute of facts exists and that the default judgment constitutes a willful and malicious injury under 11 U.S.C. § 523(a)(6) as a matter of law. [Adv.Doc. #26–1.] In the motion, the Brixeys request that the court give full faith and credit to the default judgment which, they assert, includes allegations deemed true that the Debtor committed willful and malicious acts.

On January 22, 2002, the Debtor filed a motion for an additional thirty days to respond because he was representing himself. [Adv.Doc. #27–1.] This court granted the extension and ordered the Debtor to respond by February 21, 2002. [Adv.Doc. #28–1.] The Debtor filed his response to the motion for summary judgment on February 28, 2002, one week after the deadline. [Adv.Doc. #29–1.] The Debtor's response includes a one page sworn memorandum denying that he obtained the Brixeys' credit history and denying that anything "malicious" was ever done with their credit information. *Id.*

Because of the untimeliness of the Debtor's response, the Brixeys filed a motion to strike or, in the alternative, a reply. [Adv. Doc. #30–1.] Even if the court should deem it appropriate to consider the Debtor's response, the Brixeys assert that it contains no legal argument in opposition to their motion for summary judgment. *Id.*

## *LEGAL ANALYSIS*

■ An initial issue for the court to address is the Brixeys' motion to strike the Debtor's response to their motion for summary judgment. The Brixeys understand the circumstances which have driven the Debtor to represent himself, but they believe he should be held to the court's extended February 21, 2002 deadline. Because the Debtor did not respond until a week after the deadline, the Brixeys assert that the response should be stricken.

■ The court has discretion to permit or exclude late-filed materials in opposition to summary judgment. *Blankenship v. Parke Care Centers, Inc.,* 913 F.Supp. 1045, 1049 (S.D.Ohio 1995) (allowing an untimely response when the late filing resulted in no delay or prejudice), *aff'd* 123 F.3d 868 (6th Cir.1997); *United States v. Lenard (In re Lenard),* 140 B.R. 550, 553 (D.Colo.1992) Because of the circumstances driving the Debtor to proceed *pro se* and the fact that the Brixeys have demonstrated no prejudice to themselves caused by the Debtor's delay, the court will exercise its discretion and permit the

Debtor's untimely response. The Brixeys' motion to strike is denied.

■ Although willing to accept the Debtor's response, the court agrees with the Brixeys that it is of limited value because the Debtor furnishes no legal argument to counter the Brixeys' analysis of the recognition to be provided to a state court default judgment. Nonetheless, this court may only grant summary judgment if the record supports that no genuine issues of material fact exist and that the movants have established all elements of their claim on which they bear the burden of persuasion at trial. *See* Fed.R.Civ.P 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Thus, the fact that the Brixeys' legal argument remains essentially unopposed does not relieve the court of the duty to determine whether summary judgment is appropriate nor does it negate the Brixeys' requirement that they meet the burden of proving all elements of their claim.

■ The Brixeys assert that the default judgment against the Debtor is nondischargeable under 11 U.S.C. § 523(a)(6) which states:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

11 U.S.C. § 523(a)(6). Under this provision, the Brixeys carry the burden of proving that the Debtor caused an injury that was deliberate or intentional rather than merely negligent or reckless. *Kawaauhau v. Geiger*, 523 U.S. 57, 62–63, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The debt will be discharged unless they can prove that the Debtor "desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999). Under this scenario, the Brixeys carry a significant burden of proof.

■ The Brixeys' burden is more complex in this case because the court first must determine whether the state court judgment should be given preclusive effect as to any elements of the Brixeys' claim. Under 28 U.S.C. § 1738, federal courts are directed to give the same "full faith and credit" to a state court judgment as would be given that judgment under the law of the state in which the judgment is rendered. *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 317 (6th Cir.1997). This means that in order for an Ohio state court default judgment to have preclusive effect in a bankruptcy court, it must have preclusive effect in Ohio.

Initially, this court must decide if Ohio law's concept of claims preclusion (also called res judicata or estoppel by judgment) or issue preclusion (also called collateral estoppel) applies. The District Court for the Southern District of Ohio, summarizing the language of the Montgomery County Court of Appeals, explains the difference between these two concepts under Ohio law:

Res judicata encompasses two concepts: estoppel by judgment ["claims preclusion"], and collateral estoppel ["issue preclusion"]. Estoppel by judgment prevents the relitigation of the same cause of action in a subsequent lawsuit. It does not apply when the causes of action are not the same. To constitute a bar, there must be identity not only of subject matter, but also of the cause of action. If the same facts or evidence would sustain both, the two actions are considered the same. . . .

Collateral estoppel, by contrast, prevents the relitigation of an issue that has been actually and necessarily determined in a prior action. A right, question, or fact in issue that was necessarily determined by the court in a final judgment cannot be litigated in a subsequent suit between the same parties even when the subsequent suit is based on a different cause of action.... Factual issues not necessarily decided in a prior litigation are not subject to collateral estoppel even though they could have been raised and decided. The collateral estoppel version of res judicata is particularly fact-sensitive, which makes it important to remember that both res judicata and collateral estoppel are affirmative defenses that must be pleaded and proven.

*Lupo v. Voinovich,* 858 F.Supp. 699, 702–703 (S.D.Ohio 1994) (quoting the Montgomery County Court of Appeals in *Bench Billboard Co. v. City of Dayton,* Case No. 13015, 1992 WL 80772 (Ohio Ct.App. April 10, 1992)). In this case, the Brixeys' claim of a willful and malicious injury under § 523(a)(6) involves a different cause of action than the prior default judgment. Consequently, the doctrine of collateral estoppel or issue preclusion applies.

■ Under Ohio law, the doctrine of collateral estoppel bars the relitigation of an issue which was: 1) actually litigated; 2) directly determined; and 3) essential to the judgment handed down in the prior

action. *Buckeye Union Ins. Co. v. New England Ins. Co.,* 87 Ohio St.3d 280, 287, 720 N.E.2d 495, 501 (1999) (relying on decision in *Goodson v. McDonough Power Equip., Inc.,* 2 Ohio St.3d 193, 443 N.E.2d 978 (1983)). The Brixeys appear to argue that, although their judgment is by default, the Debtor's willful and malicious intent to injure should be considered an issue actually litigated and necessary to the prior judgment.

Unfortunately, the case law is not so clear. The Supreme Court of Ohio has not answered whether a default judgment can meet the "actually litigated" prong of the collateral estoppel doctrine and Ohio intermediate courts and federal bankruptcy courts provide conflicting views on the issue. *See e.g., Hinze v. Robinson (In re Robinson),* 242 B.R. 380, 387 (Bankr. N.D.Ohio 1999) (holding that the "actually litigated" prong of the collateral estoppel test is only met with a default judgment under limited circumstances); *Dean v. Rogers (In re Rogers),* 189 B.R. 136, 140 (Bankr.N.D.Ohio 1995) (refusing to apply collateral estoppel to a state court default judgment when the defendant did not actively participate at any level in the state action); *Merkle v. Hodary,* No. C–990223, 2000 WL 145325, at *4 (Ohio Ct.App. February 11, 2000) (noting that collateral estoppel is not consistently applied to default judgments in Ohio, but deciding to apply the doctrine under the specific facts of the case).[1]

---

1. The court would note that at one point, the Sixth Circuit appeared to answer the very issue of whether a default judgment should be given preclusive effect. In *Spilman v. Harley,* the Sixth Circuit indicated that if "important issues were not actually litigated in the prior proceeding, as in the case with a default judgment, then collateral estoppel does not bar relitigation in the bankruptcy court." 656 F.2d 224, 228 (6th Cir.1981). However, later Sixth Circuit decisions of *Rally Hill Produc-*

*tions, Inc. v. Bursack* and *Bay Area Factors v. Calvert* call into question the bright-line rule created in *Spilman.* *In re Bursack,* 65 F.3d 51, 54 (6th Cir.1995); *Calvert,* 105 F.3d 315, 319 (6th Cir.1997). In *Calvert,* the Sixth Circuit suggests that the court in *Spilman* failed to do the necessary analysis under Ohio state law to determine whether Ohio courts would give the default judgment preclusive effect. 105 F.3d at 319. Thus, it would appear that

Although there is no clear majority opinion, this court supports the holding of the Bankruptcy Court for the Northern District of Ohio in the *Robinson* case. In *Robinson,* the bankruptcy court conducted a thorough analysis using its best judgment to anticipate how the Ohio Supreme Court would rule if confronted with the issue of the collateral estoppel effect to be given a default judgment. 242 B.R. at 386. The bankruptcy court concluded that for a default judgment to meet the "actually litigated" requirement, the judgment would have to meet two conditions:

First, the plaintiff must actually submit to the state court admissible evidence apart from his pleadings. In other words, a plaintiff's complaint, standing alone, can never provide a sufficient basis for the application of the collateral estoppel doctrine. Second, the state court, from the evidence submitted, must actually make findings of fact and conclusions of law which are sufficiently detailed to support the application of the collateral estoppel doctrine in the subsequent proceeding. . . .

*Id.* at 387. These conditions, requiring admissible evidence to be submitted to the state court beyond the pleadings and detailed findings of fact/conclusions of law, are necessary so that the "actually litigated" requirement of the collateral estoppel doctrine is not rendered superfluous. *Id.*

On summary judgment, the Brixeys offer no proof that the state court rendered its default judgment based on evidence, submitted beyond the pleadings, that the Debtor committed a willful and malicious injury. Furthermore, the default judgment includes no detailed findings of fact or conclusions of law based on any such evidence. This court concludes that the issue of whether the Debtor committed a willful and malicious injury was not "actu-

ally litigated" in the state court. Thus, collateral estoppel does not bar that issue from being litigated in the bankruptcy court.

Furthermore, the Brixeys have not proven another element of the collateral estoppel doctrine: that the issue to be barred from relitigation in the bankruptcy court was "essential to the judgment handed down in the prior action." *Buckeye Union,* 87 Ohio St.3d at 287, 720 N.E.2d at 501 The Brixeys have not demonstrated that the "willfulness" of the Debtor's acts or intent to cause injury were necessary elements to the default judgment. To the contrary, the Brixeys' counterclaim, deemed true by the default judgment, left open that the Debtor's conduct could have been negligent. [Adv.Doc. # 26–1, attached copy of counterclaim, ¶¶ 11 and 15.]

The court concludes that the issue of whether the Debtor committed a willful and malicious injury was neither actually litigated in the state court nor was the issue essential to the state court default judgment. For these reasons, the doctrine of collateral estoppel does not bar the issue from being litigated in this bankruptcy court.

**Wherefore,** the court denies the Plaintiffs' Motion to Strike and Motion for Summary Judgment.

**It is so ordered.**

the bright-line test in *Spilman* is no longer viable law.