OPINION
{¶ 1} Kevin S. Chavis, administrator of the estate of Mark S. Chavis, deceased, plaintiff-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, in which the court granted summary judgment to National Union Fire Insurance Company of Pittsburgh, PA. ("National Union"), and AIG Technical Services, Inc. ("AIG"), defendants-appellees.
 {¶ 2} On February 1, 2000, Mark S. Chavis was injured in an industrial accident that occurred at his place of employment, Decorative Surfaces International, Inc. ("DSI"). Chavis died on February 28, 2000. DSI was insured under a commercial umbrella policy issued by National Union, with policy limits of $25 million. AIG was the claims administrator for the commercial umbrella policy issued by National Union. On March 28, 2000, appellant filed an action against DSI claiming DSI had committed an intentional tort. On February 27, 2004, appellant and DSI submitted to the trial court several stipulations. Paragraphs 12 and 15 of the stipulations provide the following:
12. Defendant Decorative Services International, Inc., stipulates that it knew of the existence of dangerous procedures and conditions in regard to the work being performed by Plaintiffs' Decedent, Mark S. Chavis, as it relates to the cleaning and operation of the PC4 Banbury machine; that Defendant DSI knew if Plaintiffs' Decedent, Mark S. Chavis, was exposed to the dangerous procedures and conditions surrounding the operation and cleaning of the PC4 Banbury machine, that harm to Plaintiffs' Decedent was substantially certain to occur; and that despite such circumstances and with such knowledge, Defendant DSI required Plaintiffs' Decedent, Mark S. Chavis, to continue to be exposed to said dangerous procedures and conditions surrounding the operation and cleaning of the PC4 Banbury machine. Defendant DSI further stipulates that as a result of its conduct, Plaintiffs' Decedent, Mark S. Chavis, was catastrophically injured on February 1, 2000, and subsequently died on February 28, 2000.
* * *
15. DSI, by and through it's [sic] management and supervision staff, did not have a specific intent to harm Mr. Chavis.
 {¶ 3} Also on February 27, 2004, the trial court entered a decision and judgment entry in which the court found that, as a result of DSI's intentional tort, Chavis suffered conscious pain and suffering in the amount of $500,000. The court also found that the death of Chavis caused damages to his wrongful death beneficiaries in the amount of $4.5 million. Accordingly, the court entered judgment in favor of appellant and against DSI in the amount of $5 million.
 {¶ 4} On April 16, 2004, appellant sought to enforce the February 27, 2004 judgment by filing, against AIG and National Union (collectively referred to hereafter as "National Union"), a supplemental complaint for judgment ordering insurers to pay judgment creditors of their insured. On July 14, 2004, National Union filed a motion for summary judgment, claiming that appellant was not entitled to recover under the policy because the claim was not an "occurrence" within the meaning of the policy, and the policy excluded coverage for intentional tort claims. On July 28, 2004, appellant filed a cross-motion for summary judgment.
 {¶ 5} On September 3, 2004, the trial court issued a decision granting National nion's motion for summary judgment and denying appellant's motion for summary judgment. A judgment journalizing the decision was filed September 15, 2004. Appellant appeals the judgment of the trial court, asserting the following assignment of error:
The trial court committed reversible error by denying Appellant's motion for summary judgment and, instead, granting National Union Fire's motion for summary judgment.
 {¶ 6} Appellant argues in his assignment of error that the trial court erred in granting summary judgment to National Union and in denying his motion for summary judgment. Pursuant to Civ.R. 56(C), summary judgment is appropriate when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his favor. Zivich v. Mentor SoccerClub, Inc. (1998), 82 Ohio St.3d 367. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-293. Once the moving party satisfies its burden, the non-moving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). Mootispaw v. Eckstein (1996), 76 Ohio St.3d 383, 385. Doubts must be resolved in favor of the non-moving party. Murphy v.Reynoldsburg (1992), 65 Ohio St.3d 356, 358-359. Appellate review of summary judgments is de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105; Zemcik v. LaPine Truck Sales Equip. Co.
(1998), 124 Ohio App.3d 581, 585.
 {¶ 7} Courts construe the language of an insurance contract as a matter of law. Leber v. Smith (1994), 70 Ohio St.3d 548, 553. In determining the meaning of an insurance contract, a court should first consider the policy language, giving terms their plain and ordinary meaning. Gomolka v. State Auto. Mutl. Ins. Co. (1982), 70 Ohio St.2d 166,167-168. If contract provisions allow for more than one interpretation, the provisions must be strictly construed against the insurer. King v.Nationwide Ins. Co. (1988), 35 Ohio St.3d 208, 211. However, if the language of the policy's provisions is clear andunambiguous, a court may not resort to construction of that language. Karabin v. State AutomobileMut. Ins. Co. (1984), 10 Ohio St.3d 163, 167.
 {¶ 8} In the present case, appellant argues that the trial court erred in finding that the National Union policy did not provide coverage for its judgment against DSI. The policy in question contains several pertinent provisions. Section I, entitled "Coverage," provides the following:
We will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the Insured under anInsured Contract because of Bodily Injury, Property Damage, PersonalInjury or Advertising Injury that takes place during the Policy Period and is caused by an Occurrence happening anywhere in the world. * * *
"Occurrence," as used in Section I, is defined by Section IV(H)(1) as the following:
As respects Bodily Injury or Property Damage, an accident, including continuous or repeated exposure to conditions, which results in BodilyInjury or Property Damage neither expected nor intended from the standpoint of the Insured. All such exposure to substantially the same general conditions shall be considered as arising out of one Occurrence[.]
Further, under Section V(O), the policy provides an explicit exclusion for bodily injury or property damage "expected or intended from the standpoint of the Insured."
 {¶ 9} The trial court in the present case concluded that, when a policy does not provide coverage for bodily injury "expected or intended" from the standpoint of the insured, there is no coverage for substantial certainty employer intentional torts. We agree and find our decision inAltvater v. Ohio Cas. Ins. Co., Franklin App. No. 02AP-422, 2003-Ohio-4758, to be controlling and directly on point with the current case. InAltvater, the estate of a deceased employee brought an intentional tort action against the deceased's employer. Although the president of the employer testified that it did not specifically intend to injure the employee, a jury found that the employer's actions constituted a substantial certainty employer intentional tort, and awarded damages to the estate of the deceased employee. The estate then sought to satisfy the judgment against the employer's insurance company. The policies at issue in Altvater included coverage for an "occurrence," which it defined, similar to the policy in the present case, as an accident that results in bodily injury or property damage neither expected nor intended from the standpoint of the insured. The trial court in Altvater
eventually found that the insurance policy did not provide coverage for a substantial certainty employer intentional tort and granted summary judgment to the insurance company.
 {¶ 10} On appeal, the estate argued that coverage for a substantial certainty employer intentional tort was not precluded by a provision exempting or excluding bodily injuries expected or intended from the standpoint of the insured. The estate claimed there was a distinction between direct intent (actual intent to injure) and substantial certainty intentional torts, and that, in order to preclude insurance coverage under an expected or intended clause, the insurer must demonstrate the existence of an actual intent to injure. Thus, the estate contended, because the employer's president testified that he did not intend to injure or kill the employee, there was no evidence of any actual intent to injure the employee, and the expected or intended language in the policies did not exclude coverage for the employer's substantially certain intentional tort.
 {¶ 11} We rejected the estate's arguments in Altvater because we found the Ohio Supreme Court's decision in Penn Traffic Co. v. AIU Ins. Co.,99 Ohio St.3d 227, 2003-Ohio-3373, to be controlling. In analyzing whether an injury was expected or intended, the Ohio Supreme Court inPenn Traffic adopted Justice Cook's concurring opinion in Buckeye UnionIns. Co. v. New England Ins. Co. (1999), 87 Ohio St.3d 280, to find "`where substantial certainty exists, intent to harm will be inferred as a matter of law.'" Penn Traffic, at ¶ 6, quoting Buckeye Union, at 289 (Cook, J., concurring in judgment only). Applying this holding to the facts in Altvater, we concluded that, because the jury found the employer knew that harm to the employee was substantially certain to occur, and the Ohio Supreme Court held in Penn Traffic that intent to harm will be inferred in substantial certainty intentional tort cases, it must be inferred as a matter of law that the employer intended to injure the employee. Therefore, because the employee's bodily injury was "expected and intended" from the standpoint of the employer, the employee's injury could not be considered an "occurrence," and there could be no coverage. Finding no issues of material fact remained as to coverage, we found summary judgment in favor of the insurer was proper.
 {¶ 12} The present circumstances are virtually identical to those inAltvater. In the present case, the policy contains the same coverage for an "occurrence," which is defined by Section IV(H)(1) as being bodily injury not expected or intended from the standpoint of the insured. Further, as in Altvater, although the employer did not specifically intend to injure the employee, the employer's actions constituted a substantial certainty employer intentional tort. Accordingly, as inAltvater, we must follow in the present case the Ohio Supreme Court's decision in Penn Traffic adopting Justice Cook's concurring opinion inBuckeye Union and find that, where substantial certainty exists, intent to harm will be inferred as a matter of law. Penn Traffic, at ¶ 6, quoting Buckeye Union, at 289. Although the Ohio Supreme Court did not offer any analysis in Penn Traffic beyond the bare citation to this single sentence in Justice Cook's concurring opinion, we are compelled to follow its mandates. Thus, following our prior determination in Altvater
and the Ohio Supreme Court's decision in Penn Traffic, we find that, because DSI's actions constituted a substantial certainty intentional tort, intent to injure must be inferred as a matter of law. Therefore, Chavis's bodily injury was "expected or intended" from the standpoint of DSI. As Chavis's bodily injury was expected and intended, his injury could not be considered an "occurrence" under the policy at issue, and there can be no genuine issue remaining as to whether the policy provided insurance coverage for Chavis's death. Consequently, summary judgment in favor of National Union was appropriate. Appellant's assignment of error is overruled.
 {¶ 13} Accordingly, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Klatt and French, JJ., concur.