PENN TRAFFIC COMPANY, D.B.A. BIG BEAR STORES, APPELLANT AND CROSS-APPELLEE, *v.* AIU INSURANCE COMPANY; CINCINNATI INSURANCE COMPANY ET AL., APPELLEES AND CROSS-APPELLANTS; RAMSEY ET AL., APPELLANTS AND CROSS-APPELLEES.

PENN TRAFFIC COMPANY, D.B.A. BIG BEAR STORES, APPELLANT,
*v.* AIU INSURANCE COMPANY ET AL., APPELLEES;
RAMSEY ET AL., APPELLANTS.

[Cite as *Penn Traffic Co. v. AIU Ins. Co.,*
99 Ohio St.3d 227, 2003-Ohio-3373.]

(Nos. 2001–1891 and 2002–0262—Submitted January
7, 2003—Decided July 16, 2003.)

O'CONNOR, J.

{¶ 1} On April 12, 1995, appellant Virginia S. Ramsey was injured when she fell off a loading dock while working for plaintiff-appellant Penn Traffic Company, d.b.a. Big Bear Stores. Ramsey and her husband, appellant Marlin K. Ramsey, filed intentional tort claims against Penn Traffic. The complaint alleged, inter alia, that Penn Traffic's failure to place a guardrail on the loading dock made Ramsey's injuries substantially certain to occur. In September 1997, a jury returned a verdict in favor of the Ramseys for more than $2.7 million in compensatory damages.

{¶ 2} When Penn Traffic's insurance carriers declined to indemnify its insured and pay the judgment, Penn Traffic filed this action for declaratory judgment against its various insurers.[1] The trial court concluded that Penn Traffic was

---

1. After the underlying trial, Penn Traffic settled the Ramseys' claims and assigned to them certain rights of recovery against Penn Traffic's insurers. Consequently, the Ramseys are parties to this action.

entitled to coverage under an employer's liability policy, but the court reserved final judgment against that insurer in order to resolve some factual issues. The trial court granted summary judgment to the remaining insurance companies, including appellees and cross-appellants, Cincinnati Insurance Company ("CIC") and Federal Insurance Company. The court included Civ.R. 54(B) language making the order a final, appealable one.

{¶ 3} The court of appeals affirmed summary judgment in favor of CIC.[2] The court reversed the judgment as to Federal Insurance and remanded the cause, concluding that a genuine issue of material fact remained as to coverage under Federal's umbrella policy.

{¶ 4} The court of appeals certified that its decision was in conflict with the decision of the Third District Court of Appeals in *Maffett v. Moyer's Auto Wrecking, Inc.* (June 7, 2000), Crawford App. Nos. 3–99–11 and 3–99–12, 2000 WL 743707. We determined that a conflict exists and ordered the following issue to be briefed by the parties: "whether a commercial general liability insurance policy which contains an exclusion for 'bodily injury to an employee' which arises out of or in the course of employment covers an employer's liability for substantially certain intentional torts." *Penn Traffic Co. v. AIU Ins. Co.* (2002), 95 Ohio St.3d 1406, 765 N.E.2d 875.

{¶ 5} This cause is now before this court upon our determination that a conflict exists (case No. 2002–0262) and pursuant to the allowance of a discretionary appeal and cross-appeals (case No. 2001–1891).

{¶ 6} The parties agree that the underlying judgment in the Ramsey case was premised upon a "substantial certainty" intentional tort. This type of "employer intentional tort" occurs when the employer does not directly intend to injure the employee, but acts with the belief that injury is substantially certain to occur. *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489. "[W]here substantial certainty exists, intent to harm will be inferred as a matter of law." *Buckeye Union Ins. Co. v. New England Ins. Co.* (1999), 87 Ohio St.3d 280, 289, 720 N.E.2d 495 (Cook, J., concurring in judgment only).

{¶ 7} Appellants ask us to determine which CIC policy applied when Mrs. Ramsey was injured, and to find coverage for substantial-certainty intentional torts under the applicable policy or policies as a matter of law. With respect to Federal Insurance, appellants urge us to conclude that there is no genuine issue of material fact and that the umbrella policy provides coverage as a matter of law.

{¶ 8} For the reasons that follow, we conclude that the CIC policy in effect at the time of Ramsey's injury does not provide coverage for substantial-certainty

---

2. The court also affirmed the summary judgment in favor of the other insurance companies. They settled with Penn Traffic and are not parties to this appeal.

intentional torts. However, there exists a genuine issue of material fact with respect to the Federal policy. Therefore, we affirm the judgment of the court of appeals.

{¶ 9} An insurance policy is a contract, and its construction is interpreted as a matter of law. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146. In determining the meaning of the insurance contract, we look at the policy language, giving terms their plain and ordinary meaning, to ascertain a reasonable understanding of the contract. *Gomolka v. State Auto. Mut. Ins. Co.* (1982), 70 Ohio St.2d 166, 167–168, 24 O.O.3d 274, 436 N.E.2d 1347. We begin by examining the policies at issue.

A. CIC Insurance Policies

{¶ 10} CIC issued commercial insurance policies to Penn Traffic. For the period March 1, 1992, to March 1, 1995, CIC issued to Penn Traffic a commercial general liability policy ("CGL") and also an "Ohio Stop–Gap Employers' Liability Coverage Form." CIC contends that, pursuant to a General Change Endorsement, it deleted Penn Traffic's stopgap coverage and added the Ohio Liability Coverage Enhancement, Form GA216OH, effective March 1, 1994.

{¶ 11} When Penn Traffic renewed the CGL policy from CIC for the period March 1, 1995, to March 1, 1998, the enhancement coverage was also renewed as part of the policy. CIC also issued an excess liability policy to Penn Traffic for this period. According to CIC, this CGL policy and the liability enhancement endorsement were in effect at the time Mrs. Ramsey was injured.

{¶ 12} Penn Traffic, however, contends that it had no knowledge of and did not consent to deletion of the stopgap form and issuance of the liability enhancement endorsement. Penn Traffic argues that any change by CIC in 1994 was an improper unilateral modification and that the renewal of the CGL policy in March 1995 did not become effective until countersigned by Penn Traffic's agent on April 14, 1995, two days after Mrs. Ramsey was injured. Consequently, Penn Traffic contends that the stopgap form remained in effect when Mrs. Ramsey was injured and provided coverage as a matter of law.

{¶ 13} The trial court, without explanation, determined that "there is no genuine issue as to any material fact based on the clear and unambiguous language of the underlying policies that injury to an employee by an intentional tort of the insured is not covered by the CIC policies." The appellate court performed its own review of the policies and agreed that neither the 1992 nor the 1995 policy provided coverage to Penn Traffic. Consequently, the court did not reach the issue of which policy applied at the time of Ramsey's injury.

{¶ 14} We note that the courts below addressed these issues in the wrong order. We will begin with a determination of which policy was in effect at the time of the Ramsey injury and then analyze only the relevant policy.

{¶ 15} CIC issued a CGL to Penn Traffic in 1992. The 1992 CGL contained the stopgap coverage form discussed above as a subpolicy. CIC notified Penn Traffic that it was replacing the stopgap subpolicy with the Ohio Liability Coverage Enhancement endorsement, effective March 1, 1994. The change was countersigned on Penn Traffic's behalf by its designated agent, just as the original 1992 policy had been. Penn Traffic, through its agent, agreed to the 1994 coverage change. Thus, the stopgap coverage ceased a year prior to Ramsey's injury. See, e.g., *Nagle Heating & Air Conditioning Co. v. Heskett* (1990), 66 Ohio App.3d 547, 585 N.E.2d 866.

{¶ 16} Penn Traffic argues that the agent it authorized to countersign CIC policies was not its agent, but that of CIC. However, "[a] well-settled doctrine of the law of agency is that a principal may ratify the acts of its agent performed beyond the agent's scope of authority, and such ratification relates back to the time of performance of the acts and binds the principal from that time." *State v. Warner* (1990), 55 Ohio St.3d 31, 65, 564 N.E.2d 18. Penn Traffic's acceptance of the 1995 policy, whether before or after Ramsey's injury, served to ratify the agent's acceptance of the 1994 change.

1. CGL and Enhancement Endorsement

{¶ 17} Under Section 1(A)(1)(a) of the CGL policy for the period March 1, 1995, through March 1, 1998, CIC agreed to pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Section 1(A)(1)(b)(1) provided coverage for bodily injury and property damage "only if" it is *"caused by an 'occurrence.'"* (Emphasis added.) The policy defined "occurrence" as *"an accident, including continuous or repeated exposure to substantially the same general harmful conditions."* (Emphasis added.) The policy did not define the word "accident."

{¶ 18} The CGL policy expressly excluded coverage for bodily injury that is *"expected or intended from the standpoint of the insured"* and bodily injury to "[a]n employee of the insured *arising out of and in the course of employment* by the insured." (Emphasis added.)

{¶ 19} The Ohio Liability Coverage Enhancement Endorsement modified the insurance provided under the CGL. The enhancement provided additional Ohio liability coverage as follows:

{¶ 20} "COVERAGE D—OHIO LIABILITY COVERAGE

{¶ 21} "1. Insuring Agreement.

{¶ 22} "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' sustained by any employee of the insured arising out of or in the course of his or her employment by the insured, provided the employee is reported and declared under the Workers' Compensation Fund of the State of Ohio. * * * The 'bodily injury' must be caused by an 'occurrence.' "

{¶ 23} The enhancement excludes coverage for:

{¶ 24} "h. 'bodily injury' *expected or intended from the standpoint of the insured.* This exclusion includes but is not limited to:

{¶ 25} "(1) any liability for acts committed by or at the direction of an insured with the deliberate intent to injure; and

{¶ 26} "(2) any liability for acts committed by or at the direction of an insured in which the act is substantially certain to cause 'bodily injury.' For purposes of this insurance, an act is substantially certain to cause 'bodily injury' when all three of the following conditions are met:

{¶ 27} "(a) an insured knows of the existence of a dangerous process, procedure, instrumentality or condition within its business operation;

{¶ 28} "(b) an insured knows that if an employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be substantially certain; and

{¶ 29} "(c) an insured under such circumstances and with such knowledge, does act to require the employee to continue to perform the dangerous task." (Emphasis added.)

{¶ 30} When construing a general policy with an attached endorsement, we look at the contract in its entirety. *Burris v. Grange Mut. Cos.* (1989), 46 Ohio St.3d 84, 89, 545 N.E.2d 83, overruled on other grounds, *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, paragraph one of the syllabus. Therefore, we read the endorsement as if its terms were printed within the body of the general policy.

a. Enhancement Endorsement

{¶ 31} The plain language of the Ohio Liability Enhancement clearly excludes coverage for both direct-intent and substantial-certainty employer intentional torts. The language in exclusion (h) mirrors the legal definition of a substantial-certainty intentional tort adopted from Section 8A of Restatement of the Law 2d, Torts (1965). *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 118, 570 N.E.2d 1108, paragraph one of the syllabus. Consequently, the enhancement endorsement expressly excludes the coverage that Penn Traffic seeks.

{¶ 32} Nevertheless, Penn Traffic makes an argument for coverage based upon the section titled "Who is an Insured." This section in the enhancement

endorsement replaces the "Who is an Insured" section of the CGL policy.[3] The enhancement endorsement names any corporation designated on the declarations page as the insured, including its officers, directors and stockholders, but unlike the CGL policy, the enhancement endorsement definition does not include employees of the corporation.

{¶ 33} According to Penn Traffic, it was a corporate employee who caused Mrs. Ramsey's injury. Because the enhancement endorsement excludes coverage only for injuries expected or intended by an insured, Penn Traffic contends that the instant injury is not excluded from coverage because a corporate employee, by the enhancement's own definition, is not an insured.

{¶ 34} The appellate court rejected this argument, and so do we. The Ramsey complaint was lodged against the corporate entity, Penn Traffic. The enhancement excludes such claims against the *insured*, i.e., Penn Traffic. The fact that employees are not included as insureds does not create coverage where it otherwise does not exist. Therefore, the enhancement endorsement provides no coverage.

b. CGL Policy

{¶ 35} We find that, even if appellants are correct that the enhancement endorsement was not in effect at the time of Mrs. Ramsey's injury, coverage for substantial-certainty intentional torts is still precluded under the CGL policy.

{¶ 36} The appellate court resolved the question of coverage under the CGL policy based upon the policy exclusion for bodily injury to an employee of the insured "arising out of and in the course of employment by the insured." The appellate court determined that Mrs. Ramsey was performing her job when she was injured; thus, her injuries clearly occurred "in the course of employment," and coverage was expressly excluded under the CGL policy.

{¶ 37} The Third District Court of Appeals reached the opposite conclusion in *Maffett v. Moyer's Auto Wrecking, Inc.* (June 7, 2000), Crawford App. Nos. 3–99–11 and 3–99–12, 2000 WL 743707. The *Maffett* court held that the exclusion did not apply because an employer intentional tort occurs outside the employment relationship. Id. at * 5. See *Brady v. Safety–Kleen* (1991), 61 Ohio St.3d 624, 576

---

3. {¶ a} The section states:

{¶ b} "Section II—WHO IS AN INSURED is deleted in its entirety and replaced by the following:

{¶ c} "1. If you are designated in the Declarations as:

{¶ d} "* * *

{¶ e} "c. an organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respect to liability to which this insurance applies. Your stockholders are also insureds, but only with respect to their liability as your stockholders."

N.E.2d 722, paragraph one of the syllabus; *Blankenship v. Cincinnati Milacron Chemicals, Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572.

{¶ 38} This exclusion gives rise to the certified conflict before us. There is no dispute that Ramsey was working when she was injured. Consequently, on its face, the CGL policy excludes coverage because Ramsey's injuries clearly arose "in the course of employment." The issue before us is whether the reasoning of *Blankenship* recognizing a cause of action for an employer's intentional tort applies to negate an express exclusion in an insurance contract. For the reasons that follow, we find that it does not.

{¶ 39} In *Blankenship v. Cincinnati Milacron Chemicals, Inc.*, 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572, this court determined that the immunity bestowed upon employers under Ohio's workers' compensation laws does not reach intentional torts committed by an employer. The court reasoned that an employer's intentional tort occurs outside the employment relationship. See, also, *Brady v. Safety–Kleen,* 61 Ohio St.3d 624, 576 N.E.2d 722, paragraph one of the syllabus. But in *Jones v. VIP Dev. Co.* (1984), 15 Ohio St.3d 90, 15 OBR 246, 472 N.E.2d 1046, this court clarified that an injured worker may both recover under the workers' compensation system and pursue an action against his or her employer for intentional tort. Therefore, an injury that is the product of an employer's intentional tort is one that also "arises out of and in the course of" employment.

{¶ 40} *Blankenship* and *Jones* involve a common-law action for employer intentional tort as it relates to a workers' compensation claim. They do not involve analysis of the terms of a private insurance policy or the relationship between an employee and the employer's liability insurer. Although an employer intentional tort occurs outside the employment relationship for purposes of recognizing a common-law cause of action for intentional tort, the injury itself must arise out of or in the course of employment; otherwise, there can be no employer intentional tort.

{¶ 41} For purposes of the employer's insurance coverage, language in a CGL policy that excludes injuries that "arise out of or in the course of employment" merely means that the injury is causally related to one's employment. In this case, because Mrs. Ramsey's injuries arose out of and in the course of her employment, they are expressly excluded from coverage under the CGL policy.

{¶ 42} Consequently, we hold that a CGL insurance policy that contains an exclusion from coverage for bodily injury to an employee arising out of or in the course of employment does not provide coverage for an employer's liability for substantial-certainty intentional torts.

B.   Federal Insurance Umbrella Policy

{¶ 43} Federal Insurance issued an excess umbrella policy to Penn Traffic that included "Coverage A" and "Coverage B." Penn Traffic has abandoned its argument under Coverage B. Therefore, only Coverage A, "Excess Follow Form Liability Over Claims Made or Occurrence Coverage," remains at issue. It provides:

{¶ 44} "We will pay, on behalf of an insured, damages in excess of the total Limits of Liability of Underlying Insurance as stated in the Schedule of Underlying Insurance. The terms and conditions of the Scheduled Underlying insurance are with respect to Coverage A made a part of this policy, except for:

{¶ 45} "a. any definition, term or condition therein relating to: any duty to investigate and defend, the Limits of Liability, premium, cancellation, other insurance, our right to recover payment, Extended Reporting Periods, or

{¶ 46} "b. * * *

{¶ 47} "* * *

{¶ 48} "With respect to all Scheduled Underlying Policies, the injury or damage must be caused by an occurrence * * *." (Boldface deleted.)

{¶ 49} The policy defined "occurrence" as "with respect to bodily injury or property damage liability, an event, including continuous and repeated exposure to substantially the same general harmful conditions neither expected nor intended from the standpoint of the insured." (Boldface deleted.)

{¶ 50} The trial court granted summary judgment to Federal. The court concluded that "there is no genuine issue as to any material fact that Federal's policy does not extend to bodily injury expected or intended from the standpoint of the insured, Penn Traffic; accordingly, it does not extend to an employer's intentional tort."

{¶ 51} Applying the applicable law, the appellate court focused on the plain language of the policy. The court concluded that Mrs. Ramsey's fall was clearly an "event" as that term is used in the policy's definition of occurrence, "*unless* it was caused by 'continuous and repeated exposure to substantially the same general harmful conditions' which were 'expected or intended' by Penn Traffic." (Emphasis sic.) Because this was not apparent from the record, the appellate court determined that there remained a genuine issue of material fact as to whether Mrs. Ramsey's injuries were caused by "continuous and repeated exposure to substantially the same general harmful conditions neither expected nor intended from the standpoint of the insured." The court reversed the judgment and remanded the cause. We agree.

C. Conclusion

{¶ 52} We agree with the conclusions reached by the court of appeals that there is no coverage under the applicable CIC policies to Penn Traffic for

substantial-certainty intentional torts. As to Federal Insurance, there remains a genuine issue of material fact as to the existence of coverage under Federal's umbrella policy. Consequently, we affirm the judgment of the court of appeals.

{¶ 53} We resolve the conflict certified to this court in accordance with the analysis of the court below. We hold that a CGL insurance policy containing an exclusion from coverage for bodily injury to an employee arising out of or in the course of employment does not provide coverage for an employer's liability for substantial-certainty intentional torts.

Judgment affirmed.

MOYER, C.J., F.E. SWEENEY, SLABY and LUNDBERG STRATTON, JJ., concur.

RESNICK, J., concurs in judgment.

PFEIFER, J., concurs in part and dissents in part.

LYNN C. SLABY, J., of the Ninth Appellate District, sitting for COOK, J.

---

**PFEIFER, J., concurring in part and dissenting in part.**

{¶ 54} I concur with the bulk of the majority opinion. I write separately because I disagree with the majority's determination that the Stop–Gap Employer's Liability Coverage ("stopgap policy") was not in effect, apparently as a matter of law.

{¶ 55} The issue of whether the stopgap policy provides coverage in this case was not decided by the trial court. The trial court apparently presumed that the stopgap policy was in effect and determined as a matter of law that Ramsey's injury was not covered by the stopgap policy. The court of appeals affirmed that determination, without reaching the issue of whether the stopgap policy was in effect at the time of Ramsey's injury.

{¶ 56} The parties disagree about which policy was in effect at the time of Ramsey's injury. The majority states:

{¶ 57} "According to CIC, this CGL [commercial general liability] policy and the liability enhancement endorsement were in effect at the time Mrs. Ramsey was injured.

{¶ 58} "Penn Traffic, however, contends that it had no knowledge of and did not consent to deletion of the stopgap form and issuance of the liability enhancement endorsement."

{¶ 59} Whether the stopgap policy was in effect at the time of the injury, a question of fact, was not ruled on by the trial court or the court of appeals and

was neither briefed nor argued to this court. Accordingly, I would remand that issue to the trial court.

---

Robert P. Rutter; Lamkin, Van Eman, Trimble, Beals & Rourke and Kenneth Blumenthal, for appellants and cross-appellees, Penn Traffic and Virginia S. and Marlin K. Ramsey.

Roetzel & Andress, Laura M. Faust, Kevin J. Osterkamp and Alisa Labut Wright, for appellee and cross-appellant Cincinnati Insurance Company.

Gallagher, Sharp, Fulton & Norman, D. John Travis and Gary L. Nicholson, for appellee and cross-appellant Federal Insurance Company.

Daniel J. Kelso, urging affirmance for amicus curiae Ohio Insurance Institute.

Murray & Murray Co., L.P.A., Steven C. Bechtel, W. Patrick Murray and Dennis E. Murray Sr., urging reversal for amicus curiae Ohio Academy of Trial Lawyers.