OPINION
{¶ 1} Viola Altvater, administratrix of the estate of Robert K. Altvater, deceased, plaintiff-appellant, appeals from a judgment of the Franklin County Court of Common Pleas granting a motion for summary judgment filed by Ohio Casualty Insurance Company ("Ohio Casualty"), defendant-appellee.
 {¶ 2} Robert K. Altvater, deceased, was employed by Claycraft Company ("Claycraft") from 1948 to 1980 as a plug mill operator in Claycraft's brick factory. In such employment, he was exposed to silica dust. Robert died on March 17, 1983, as a result of chronic obstructive pulmonary disease. An autopsy slide of his lungs showed 15 percent silica dust. Claycraft was insured by Ohio Casualty from January 1, 1977 to January 1, 1986, under various policies. Special multi-peril policies were issued to provide bodily injury and property damage general liability coverage as follows: (1) Policy No. AMP 53 94 90 (January 1, 1977 to January 1, 1980); (2) Policy No. AMP 56 30 46 (January 1, 1980 to January 1, 1983); and (3) Policy No. XPO 17 63 45 (January 1, 1983 to January 1, 1986).
 {¶ 3} Commercial umbrella liability policies were also issued by Ohio Casualty to Claycraft, as follows: (1) Policy No. LXC 50 73 14 (January 1, 1977 to January 1, 1978); (2) Policy No. LXC 50 94 96 (January 1, 1978 to January 1, 1979); (3) Policy No. LXC 51 25 23 (January 1, 1979 to January 1, 1980); (4) Policy No. LXC 51 61 25 (January 1, 1980 to January 1, 1981); (5) Policy No. LXC 51 97 58 (January 1, 1981 to January 1, 1982); (6) Policy No. LXO 52 24 28 (January 1, 1982 to January 1, 1983); and (7) Policy No. XEO 17 63 45 (January 1, 1983 to January 1, 1986).
 {¶ 4} On August 10, 1984, Viola, Robert's wife, filed a wrongful death and survivorship action against Claycraft, alleging that Robert died as a proximate result of an employer intentional tort, i.e., Claycraft's conduct of exposing Robert to silica dust. On October 11, 1984, Claycraft filed an answer and third-party complaint against Ohio Casualty, seeking a declaration that Ohio Casualty had a duty to defend/indemnify Claycraft on the intentional tort claim based upon the various insurance policies. On December 30, 1987, summary judgment was granted in favor of Ohio Casualty, indicating that Ohio Casualty had no duty to defend Claycraft. Claycraft then filed a motion for summary judgment on the basis of res judicata/collateral estoppel based upon an administrative workers' compensation ruling. The trial court granted summary judgment. We reversed the trial court's judgment in Altvater v. Claycraft Co. (1991), 71 Ohio App.3d 264. The Ohio Supreme Court denied a motion to certify in Altvater v. Claycraft Co. (1991), 62 Ohio St.3d 1408.
 {¶ 5} The employer intentional tort claim proceeded to trial. On September 21, 1992, a jury returned a verdict in favor of Viola, awarding $1,346,000 in damages ($840,000 in compensatory damages, $6,000 in funeral expenses, and $500,000 in punitive damages). The jury found that Claycraft had knowledge of the existence of a dangerous condition within its business operation, had knowledge that, if Robert was subjected to such dangerous conditions, harm to him would be a substantial certainty, and with this knowledge acted to require Robert to continue a dangerous task. However, the trial court granted Claycraft's motion for a new trial, finding an irreconcilable and inconsistent difference between the verdict and interrogatory answers. Viola appealed, and we reversed the trial court's judgment in Altvater v. Claycraft Co. (1994),92 Ohio App.3d 759. The trial court then entered a judgment consistent with the trial court's verdict on July 6, 1994. Claycraft has not paid the judgment, and it has completed an asset-only sale of its property.
 {¶ 6} On June 7, 1995, Viola filed a supplemental complaint against Ohio Casualty, pursuant to R.C. 3929.06, seeking to satisfy the September 21, 1992 judgment (except for the punitive damages portion) against Claycraft with liability insurance proceeds. On March 27, 1998, Ohio Casualty filed a motion for summary judgment, asserting that the action was barred by res judicata/collateral estoppel based upon the December 30, 1987 judgment, finding Ohio Casualty had no duty to defend or indemnify Claycraft. On January 10, 2000, the trial court granted summary judgment to Ohio Casualty. Viola appealed, and this court again reversed the trial court in Altvater v. Claycraft Co. (Dec. 5, 2000), Franklin App. No. 00AP-156, finding that Viola had not been a party to the prior proceeding.
 {¶ 7} Upon remand, Viola and Ohio Casualty filed cross-motions for summary judgment on August 10, 2001. On March 21, 2002, the trial court granted Ohio Casualty's motion for summary judgment, and denied Viola's motion for summary judgment. Viola (hereafter "appellant") appeals the trial court's judgment, asserting the following assignment of error:
The trial court erred in granting summary judgment to Ohio Casualty and denying summary judgment to plaintiff as the policy(ies) of insurance do(es) provide coverage for a substantial certainty employer intentional tort.
 {¶ 8} We first note that appellant urged this court to await the Ohio Supreme Court's decision in the appeal of Penn Traffic Co. v. AIU Ins. Co. (Sept. 10, 2001), Pike App. No. 00CA653, before deciding the present appeal because the issues to be decided in that case were the same issues involved in the present appeal. As the Ohio Supreme Court has issued a decision in Penn Traffic Co. v. AIU Ins. Co., 99 Ohio St.3d 227,2003-Ohio-3373, we now address appellant's assignment of error.
 {¶ 9} Appellant argues in her assignment of error the trial court erred in granting summary judgment to Ohio Casualty. Pursuant to Civ.R. 56, summary judgment is appropriate when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his favor. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103.
 {¶ 10} Generally, in construing contracts of insurance, words in a policy must be given their plain and ordinary meaning, and only in situations where the contract is ambiguous and, thus, susceptible to more than one meaning, must the policy language be liberally construed in favor of the claimant who seeks the benefits of coverage. State Farm Auto. Ins. Co. v. Rose (1991), 61 Ohio St.3d 528, 531-532, overruled on other grounds. Further, when the language of an insurance policy is clear, it is unnecessary and impermissible for a court to resort to construction of that language. See Karabin v. State Auto. Mut. Ins. Co. (1984), 10 Ohio St.3d 163, 166-167, citing Travelers Indem. Co. v. Reddick (1974), 37 Ohio St.2d 119, 121. Exclusions or exceptions in an insurance policy must be expressly provided or must arise by necessary implication from the policy language. Edmondson v. Motorists Mut. Ins. Co. (1976), 48 Ohio St.2d 52, 53.
 {¶ 11} In the present case, the parties filed stipulations on July 20, 2001, as to the contents of the special multi-peril policies and the commercial umbrella liability policies. The special multi-peril policies provided that Ohio Casualty would pay on behalf of the insured all sums that the insured became legally obligated to pay as damages because of bodily injury or property damage caused by an "occurrence." The commercial umbrella policies provided that Ohio Casualty would indemnify the insured for ultimate net loss in excess of the retained limit that the insured became legally obligated to pay as damages because of personal injury, property damages, or any advertising offense caused by an "occurrence." All of the special multi-peril policies and the commercial umbrella policies defined "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." (Emphasis omitted.) In addition, all of the special multi-peril policies and the last commercial umbrella policy (effective from January 1, 1983 to January 1, 1986) contained an exclusion indicating that the policies did not apply to bodily injury to any employee of the insured arising out of and in the course of employment by the insured or to any obligation of the insured to indemnify another because of damages arising out of such injury.
 {¶ 12} In the underlying action, the jury found that Claycraft's actions constituted a "substantial-certainty" employer intentional tort. This type of employer intentional tort occurs when the employer does not directly intend to injure the employee, but acts with the belief that injury is substantially certain to occur. Van Fossen v. Babcock 
Wilcox Co. (1988), 36 Ohio St.3d 100. Appellant argues that coverage for a substantial-certainty employer intentional tort is not precluded by a provision exempting or excluding bodily injuries "expected or intended" from the standpoint of the insured, which all of the policies in the current case contain. Appellant asserts that there is a distinction between direct-intent (actual intent to injure) and substantial-certainty intentional torts, and that in order to preclude insurance coverage under an "expected or intended" clause, the insurer must demonstrate the existence of an actual intent to injure. Appellant further contends the only evidence as to the actual intent to injure was from Claycraft's president, Phillip Tefft, who testified that he did not intend to injure or kill Robert. Thus, appellant maintains that the "expected or intended" language in the policies does not exclude coverage for Claycraft's substantially-certain intentional tort because there was no evidence of any actual intent to injure Robert.
 {¶ 13} Penn Traffic is dispositive of this issue. In Penn Traffic, Virginia Ramsey was injured when she fell off a loading dock while working for a store owned by Penn Traffic Company ("Penn Traffic"). Ramsey and her husband filed intentional tort claims against Penn Traffic, alleging that Penn Traffic's failure to place a guardrail on the loading dock made Ramsey's injuries substantially certain to occur. A jury returned a verdict in favor of the Ramseys, finding Penn Traffic had committed a substantial-certainty employer intentional tort. When Penn Traffic's insurance carriers declined to indemnify its insured and pay the judgment, Penn Traffic filed an action for declaratory judgment against its various insurers. The trial court concluded that Penn Traffic was entitled to coverage under one policy, but the court reserved final judgment against that insurer in order to resolve some factual issues. The trial court granted summary judgment to the remaining insurance companies, including Cincinnati Insurance Company ("CIC") and Federal Insurance Company ("Federal"). The court of appeals affirmed summary judgment in favor of CIC. The court reversed the judgment as to Federal and remanded the cause, concluding that a genuine issue of material fact remained as to coverage under Federal's umbrella policy. The court of appeals then certified that its decision was in conflict with the decision of the Third District Court of Appeals in Maffett v. Moyer's Auto Wrecking, Inc. (June 7, 2000), Crawford App. No. 3-99-11. The Ohio Supreme Court determined that a conflict existed, and the case proceeded pursuant to the conflict and the allowance of a discretionary appeal and cross-appeals.
 {¶ 14} The Ohio Supreme Court examined the enhancement endorsement, which modified the coverage under the commercial general liability policy. The endorsement excluded coverage for " `bodily injury' expected or intended from the standpoint of the insured." Penn Traffic, supra, at ¶ 24 (Emphasis omitted). The endorsement further provided that the exclusion included any liability for acts committed by or at the direction of an insured with the deliberate intent to injure, and any liability for acts committed by or at the direction of an insured in which the act is substantially certain to cause bodily injury. Thus, the court found that the plain language of the endorsement clearly excluded coverage for both direct-intent and substantial-certainty employer intentional torts. Therefore, the court concluded that the endorsement provided no coverage for substantially-certain intentional torts.
 {¶ 15} In the present case, appellant argues that in order to preclude insurance coverage under an "expected or intended" clause, the insurer must demonstrate the existence of an actual intent to injure, citing the majority opinion in Buckeye Union Ins. Co. v. New England Ins. Co. (1999), 87 Ohio St.3d 280. However, in analyzing whether an injury was expected or intended, the Ohio Supreme Court in Penn Traffic seemingly rejected the majority's determination in Buckeye Union that "an intent to injure, not merely an intentional act, is a necessary element to uninsurability." Buckeye Union, at 283. Rather, while addressing the distinction noted in Van Fossen between a direct intent to injure and a belief injury is substantially certain to occur, the Ohio Supreme Court in Penn Traffic quoted the portion of Justice Cook's concurring opinion from Buckeye Union, in which she stated, "`where substantial certainty exists, intent to harm will be inferred as a matter of law.'" Penn Traffic, at ¶ 6, quoting Buckeye Union, at 289 (Cook, J., concurring in judgment only). The Ohio Supreme Court had previously recognized that there was debate within its court concerning the current state of the law on whether substantial-certainty torts fall within the public policy exclusion for insurance coverage, citing Justice Cook's concurrence in Buckeye Union. See Doe v. Shaffer (2000), 90 Ohio St.3d 388, 391, fn. 5. Although it was not the basis for its final holding, the Ohio Supreme Court in Penn Traffic settled this debate, choosing to adopt Justice Cook's concurring opinion that intent to injure will be inferred as a matter of law in substantial-certainty cases.
 {¶ 16} Although the language in the present policies does not expressly exclude coverage for substantial-certainty employer intentional torts, as did the policy in Penn Traffic, these policies do contain the same proscription against coverage for any bodily injury "expected or intended." Thus, we apply the following concepts from Penn Traffic to the present case: (1) where substantial certainty exists, intent to harm will be inferred as a matter of law, and (2) there is no coverage for substantial-certainty employer intentional torts where an insurance policy excludes coverage for bodily injury "expected or intended" from the standpoint of the insured. Because the jury in the current case found Claycraft knew that harm to Robert was substantially certain to occur, and the Ohio Supreme Court held in Penn Traffic that intent to harm will be inferred in substantial-certainty intentional torts cases, it must be inferred as a matter of law that Claycraft intended to injure Robert. Therefore, Robert's bodily injury was "expected and intended" from the standpoint of Claycraft. As Robert's bodily injury was expected and intended, his injury cannot be considered an "occurrence" under any of the policies presently at issue. Accordingly, because Robert's injury was not an "occurrence" under any of the policies, there can be no genuine issue remaining as to whether the policies provided insurance coverage for Robert's death. Consequently, summary judgment was proper.
 {¶ 17} Although the above analysis is dispositive of this matter, we note that appellant additionally contends that the policies' exclusion for injuries arising out of or in the course of employment does not preclude coverage for substantial-certainty employer intentional torts, citing Blankenship v. Cincinnati Milacron Chemicals (1982),69 Ohio St.2d 608, and Brady v. Safety-Kleen Corp. (1991),61 Ohio St.3d 624. However, in analyzing the same exclusion in Penn Traffic, the court distinguished Blankenship and Brady. The court found that these cases involved a common-law action for employer intentional tort as it related to a workers' compensation claim and did not involve analysis of the terms of a private insurance policy or the relationship between an employee and the employer's liability insurer. The court reasoned that, although an employer intentional tort occurs outside the employment relationship for purposes of recognizing a common-law cause of action for intentional tort, the injury itself must arise out of or in the course of employment; otherwise, there could be no employer intentional tort. The court concluded that, for purposes of the employer's insurance coverage, language in a policy that excludes injuries that "arise out of or in the course of employment" merely means that the injury must be causally related to one's employment. Thus, the court in Penn Traffic held that an insurance policy "that contains an exclusion from coverage for bodily injury to an employee arising out of or in the course of employment does not provide coverage for an employer's liability for substantial-certainty intentional torts." Id., at ¶ 42.
 {¶ 18} In the present case, it is undisputed that the injuries arose in the course of Robert's employment with Claycraft, and his death was causally related to such employment. All of the special multi-peril policies and the last commercial umbrella policy (effective January 1, 1983 to January 1, 1986) contained exclusions for bodily injury that arose out of or in the course of employment. Thus, pursuant to Penn Traffic, these policies would also exclude coverage for Claycraft's liability for a substantial-certainty intentional tort. For the foregoing reasons, appellant's assignment of error is overruled.
 {¶ 19} Accordingly, appellant's sole assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
PETREE, P.J., and BRYANT, J., concur.