OPINION
{¶ 1} This is an appeal from the judgment of the Crawford County Court of Common Pleas which dismissed Plaintiff-appellants, William and Carolyn Coldwell's action against Defendant-appellee, Allstate Insurance Company ("Allstate").
 {¶ 2} The pertinent facts of the case are as follows. Since 1969, William Coldwell and his wife, Carolyn Coldwell, purchased automobile insurance from Allstate Insurance Company. In 1983, they purchased a personal umbrella policy which did not provide uninsured motorists ("UM") coverage. The policy became effective March 2, 1983. On these policies, William was listed as the "named insured."
 {¶ 3} On January 15, 1987, Allstate issued personal umbrella policy declarations for the policy period beginning March 2, 1987. For the first time, Allstate provided UM coverage for an additional premium. Allstate later issued personal umbrella policy declarations for the policy period beginning March 2, 1988, which also provided UM coverage for an additional premium.[1]
 {¶ 4} On March 18, 1988, Carolyn signed and dated an uninsured motorist's acceptance/rejection form. The form reveals that Carolyn placed a check mark in a box stating that "I do not want Coverage SS included in my policy." The acceptance/rejection form identifies "Coverage SS" as "Uninsured Motorists Insurance." Allstate then issued amended personal umbrella policy declarations to William stating that his policy was changed and the premium had been reduced accordingly. Every declarations form subsequent to 1988 revealed that the UM coverage had been rejected.
 {¶ 5} In 1995, the Coldwells were involved in a major traffic accident. Allegedly at fault was an uninsured tortfeasor. The Coldwells eventually filed a complaint for a declaratory judgment on the issue of UM coverage with Allstate. Both parties filed motions for summary judgment. On December 18, 1998, the trial court granted the Coldwells' motion for summary judgment on the issue of UM coverage. Allstate appealed the decision and on June 18, 1999, this court reversed the judgment of the trial court finding that there were genuine issues of material fact as to among other things, whether William expressly was offered and rejected UM coverage. Coldwell v. AllState Ins. Co. (Jun. 18, 1999), Crawford App. No. 3-99-03.
 {¶ 6} On December 27, 2000, before the case was considered on remand, the Ohio Supreme Court decided Linko v. Indemnity Insurance Co.of N. Amer., 90 Ohio St.3d 445, 449, 2000-Ohio-92 which clarified the proper form and content of an effective offer and rejection of UM coverage pursuant to R.C. 3937.18. As a result of this decision, Allstate and the Coldwells each filed another motion for summary judgment. On April 26, 2002, the trial court denied both motions stating that the decision inLinko was distinguishable from the present case because there was a signed rejection by Carolyn. However, the trial court determined that there was an issue of fact as to Carolyn's authority to sign the rejection form. On January 16 and 17, 2003, a jury trial was held. At the close of their evidence, the Coldwells made a motion for directed verdict based on an ineffective offer and rejection of UM coverage. The trial court denied this motion based on the law of the case, specifically our previous decision. Subsequently, the jury found that the Coldwells were not entitled to UM coverage because William had ratified Carolyn's actions of rejecting the UM coverage.
 {¶ 7} It is from this judgment that the Coldwells now appeal, having set forth six assignments of error. The first five will be discussed together.
 First Assignment of Error The trial court erred to the substantial prejudice of the appellants infailing to charge the jury that appellee had the burden of proving aneffective rejection of the coverage.
 Second Assignment of Error The court erred to the substantial prejudice of appellants in admittingtestimony of Carolyn Coldwell on cross-examination that endorsement (DXP) which Carolyn Coldwell had never seen prior to trial (TR 44) wascharacterized as if one paid a premium for the UM/UIM coverage you haveit and if you don't pay a premium, you don't have it. This was admittedand proceeds through transcript 47.
 Third Assignment of Error The court erred to the substantial prejudice of the appellants in thatthe court did not sustain the motion for a directed verdict by appellantsat the close of all of the evidence.
 Fourth Assignment of Error The trial court erred to the substantial prejudice of Appellants ingiving erroneous instructions to the jury on the issues of rejection ofUM/UIM coverage and in failing to give requested instructions correctlystating the law applicable to such issues.
 Fifth Assignment of Error The court erred to the substantial prejudice of Appellants in failingto instruct the jury that, following the date upon which Allstate allegesrejection, documents provided by Allstate indicating a rejection of thecoverage, may not be considered in deciding the issue of rejection ofcoverage since the alleged rejection must be either valid or not validwhen made.
 {¶ 8} First, we would note that the statutory law in effect on the date of each new policy period is the law to be applied to claims arising during that policy period. Wolfe v. Wolfe (2000), 88 Ohio St.3d 246,250, citing Ross v. Farmers Ins. Group (1998), 82 Ohio St.3d 281, 287. The policy at issue in this case was in effect from March 2, 1995, to March 2, 1996.[2] At that time, R.C. 3937.18, mandated that insurance companies offer UM/UIM coverage with every motor vehicle liability policy delivered or issued for delivery in Ohio. However, a named insured could expressly reject such coverage and/or obtain UM/UIM coverage with a lower limit. Strayer v. Lincoln General Ins. Co., Allen App. No. 1-02-100,2003-Ohio-3429 ¶ 9, citing Abate v. Pioneer Mut. Cas. Co. (1970),22 Ohio St.2d 161; former R.C. 3937.18(C). Once UM coverage has been properly offered and rejected, unless requested in writing, coverage need not be offered in renewal policies. R.C. 3937.18(C); see, e.g., Greenwoodv. Meridith, (Mar. 30, 2001), Lake App. No. 2000-L-052 at *3; Hammer v.Lumberman's Mut. Cas. Co.(Aug. 20 1999), Lucas App. No. L-98-1283 at *10.
 {¶ 9} Interpreting R.C. 3937.18,[3] the Ohio Supreme Court determined that "[t]here can be no rejection pursuant to R.C. 3937.18(C) absent a written offer of uninsured motorist coverage from the insurance provider." Gyori v. Johnston Coca-Cola Bottling Group, Inc. (1996),76 Ohio St.3d 565, paragraph one of the syllabus. The Ohio Supreme Court in Linko stated that "[t]o satisfy the offer requirement of R.C.3937.18(C), the insurer must inform the insured of the availability of UM/UIM coverage, set forth the premium for UM/UIM coverage, include a brief description of the coverage, and expressly state the UM/UIM coverage limits in its offer[.]" In Linko the rejection form read,
Ohio Revised Code Section 3937.18 requires us to offer you Uninsured/Underinsured Motorists Insurance coverage in an amount equal to the policy bodily injury liability limit(s) with respect to any motor vehicle registered or principally garaged in the State of Ohio, unless you reject such coverage.
Unless you have previously rejected this coverage, your policy has been issued to include Uninsured/Underinsured Motorists Insurance coverage at limit(s) equal to the policy bodily injury liability limit(s).
 {¶ 10} Reviewing this language, the court found that the "alleged offer is complete only in its incompleteness. It does not describe the coverage, does not list the premium costs of UM/UIM coverage, and does not expressly state the coverage limits." Id. Finally the court noted that the "four corners of the insurance agreement control in determining whether the waiver of UM coverage was knowingly and expressly made by each of the named insureds." Id. The failure to properly offer or reject UM/UIM coverage results in coverage by operation of law with the limit equal to that of the liability provision. Gyori, at 567.
 {¶ 11} As noted above, Linko was decided after our previous decision in this case but before the trial court's hearing on remand. On remand, the trial court determined that based on the law of the case, it was prohibited from applying Linko and that in any event Linko was not applicable to the present case. However, for purposes of the instant appeal, we have chosen to address the issues raised in this case within the context of the Linko decision. See Nolan v. Nolan, 11 Ohio St.3d 1, syllabus (disregarding law of the case under extraordinary circumstances such as an intervening Supreme Court decision).
 {¶ 12} In this case, Carolyn signed a pre-printed form in 1988 titled "Uninsured Motorists (Coverage SS) Acceptance/Rejection Form" which stated that she was declining UM coverage. While this form informs and gives a general description of UM coverage available, it fails as did the form in Linko, to list the premium costs of UM/UIM coverage or expressly state the coverage limits. However, Allstate issued Coldwell a prior version of the same insurance policy three months before the rejection of UM coverage which reflected that the liability limits and UM limits were equal in the amount of $1,000,000. Furthermore, that prior version of the policy also listed the premium for UM coverage as $47. While some appellate courts have interpreted Linko's "four corners" requirement to mean "four corners" of the rejection form, Linko
specifically stated that the "four corners of the insurance agreement
control." Linko, supra (emphasis added); Kalista v. Pacific EmployersIns. Co, Cuyahoga App. No. 82286, 2003-Ohio-3031 ¶ 43 (looking at the rejection form and elsewhere in the policy for UM premiums); c.f.Johnston v. Wayne Mut. Ins. Co., Pickaway App. No. 02CA3, 2002-Ohio-6157
(finding that declarations page could not be used to fulfill Linko
requirements).
 {¶ 13} Consequently, viewing the entire insurance agreement as contemplated by Linko, we find as a matter of law that Allstate made a proper offer and Carolyn made an express, knowing rejection of UM coverage in 1988. As the rejection of UM coverage occurred after the 1988 policy period began, it was effective beginning with the next policy period and renewed every policy thereafter pursuant to R.C. 3937.18(C). See Hammer, supra; Triplett v. Liberty Mut. Ins. Co. (Nov. 9, 2000), Lucas App. No. L-99-1340; Greenwood, supra; Hillyer v. State Farm Ins. Co. (1999)131 Ohio App.3d 172, citing Gyori v. Johnston Coca-Cola Bottling Group,Inc. (1996), 76 Ohio St.3d 565. That said, we would also note that while William claims that he thought he had UM coverage when the accident occurred in 1995, William was constructively apprised of rejection of UM coverage when he received a declarations page every year after the UM rejection form was signed which stated "UNISURED MOTORISTS COVERAGE REJECTED." In the prior appeal, we determined that the above statement on the declaration form "affirmatively establishes that UM coverage had been rejected and that this coverage was no longer available to the insured."
 {¶ 14} Consequently, assignment of errors one through five are overruled.
 Sixth Assignment of Error The jury was confused by the erroneous admission of evidence as toextrinsic evidence of post "rejection" documents stating that coveragehad been rejected.
 {¶ 15} The Coldwells argue that the first and third interrogatories completed by the jury regarding Carolyn's authority to reject UM coverage were inconsistent. We disagree. The first interrogatory asked "Do you find that it is more likely than not that the Plaintiff, Carolyn Coldwell, was the agent for the Plaintiff, William Coldwell in canceling the UM Coverage on 3-18-88?" The jury responded no to this question. The third interrogatory asked "Do you find that it is more likely than not the Plaintiff, William Coldwell, has ratified the rejection by Carolyn Coldwell by failing to renounce the cancellation or re-establish coverage?" The jury responded yes to this question. The Coldwells characterize the answer to the first interrogatory as finding that Carolyn was not an agent for any purpose, and therefore, William could not ratify her actions. However, the first interrogatory clearly asks whether Carolyn was an agent for purposes of canceling the coverage. That is consistent with a finding that William later ratified that act as "[a] well-settled doctrine of the law of agency is that a principal may ratify the acts of its agent performed beyond the agent's scope of authority, and such ratification relates back to the time of performance of the acts and binds the principal from that time." PennTraffic Co. v. AIU Ins. Co. 99 Ohio St.3d 227, *230, quoting State v.Warner (1990), 55 Ohio St.3d 31, 65.
 {¶ 16} Finally, the Coldwells argue that under Linko, extrinsic evidence could not be admitted to determine whether Carolyn had authority to sign the UM rejection form. Under Linko, extrinsic evidence was not admissible to show whether a signatory was cloaked with the authority to sign the rejection form for the named insured. Linko, supra. However,Linko cited Gyori for the proposition that looking only at the four corners of the insurance agreement "will prevent needless litigation about whether the insurance company offered UM coverage." Ordinarily the issue of whether Carolyn was authorized to sign the rejection form would be considered during the summary judgment stage, as was the case inLinko. However, in this case, as noted above, Linko was decided after we remanded this case ordering the lower court to try that issue.
 {¶ 17} Recognizing that the procedural posture of this case creates a unique situation which will not likely be repeated, we decline to construe Linko so as to overturn a jury verdict based upon a record (albeit which includes extrinsic evidence) which has established an informed apprisal of and intent on the part of the insured to decline and reject UM coverage consistent with the very purpose of the Linko rule.
 {¶ 18} Accordingly, the Coldwells' sixth assignment of error is overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
BRYANT, P.J., and CUPP, J., concur.
[1] We note that Allstate's uninsured motorists ("UM") acceptance/rejection form applies to both uninsured motorist's coverage and underinsured motorists ("UIM") coverage.
[2] The umbrella policy in this case was issued for the year 1982-1983. Consequently pursuant to the holding in Wolfe that every policy period must be two years pursuant to R.C. 3937.31(A) calculated from the beginning of the policy, the actual policy period in this case, was March 2, 1994 to March 2, 1996. However, the applicable law is that as stated above.
[3] While the policy in Gyori was issued in 1990, the statutory law pertinent to this case is the same as it was in 1995.