McGUFFIN et al., Appellees,

v.

ZAREMBA CONTRACTING et al., Appellants.

[Cite as *McGuffin v. Zaremba Contracting*, 166 Ohio App.3d 142, 2006-Ohio-1734.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 86594.

Decided April 6, 2006.

Bashein & Bashein Co., L.P.A., and W. Craig Bashein; Paul W. Flowers Co., L.P.A., and Paul W. Flowers; Reminger & Reminger Co., L.P.A., and David Ross; Frantz Ward, L.L.P., and Andrew J. Natale; Koeth, Rice & Pelsozy, L.P.A., and Clark D. Rice; Reid, Marshall & Wargo Ltd., Jason M. St. George and Andrew M. Wargo, for appellees.

Roetzel & Andress Co., L.P.A., and Laura M. Faust, for appellants.

---

DYKE, Administrative Judge.

{¶ 1} Third-party defendant-appellant, State Automobile Mutual Insurance Company ("State Auto"), appeals the trial court's decision that defendant and third-party plaintiff-appellee, Mr. Excavator, Inc. ("Mr. Excavator") was entitled

to coverage under State Auto's umbrella policy from the first dollar. For the reasons set forth below, we reverse.

{¶ 2} Plaintiff-appellees, Alvin and Laura McGuffin ("plaintiffs"), instituted this action on August 16, 2000, against Mr. Excavator, Alvin McGuffin's employer, and several other defendants. In the complaint, plaintiffs alleged that Alvin sustained injuries on August 19, 2000, when the sidewall on the trench in which he was working collapsed. The complaint specifically alleged that Mr. Excavator violated Ohio's "frequenter statute," R.C. 4101.11, and committed a substantially certain employer intentional tort. Mr. Excavator answered the complaint, denying liability.

{¶ 3} Upon service of the complaint, Mr. Excavator tendered the defense and indemnity of this lawsuit to its insurance carrier, State Auto. State Auto had issued a commercial general liability ("CGL") policy and an umbrella policy to Mr. Excavator. On September 20, 2002, State Auto issued a reservation of rights letter in regards to the CGL policy, stating that it would provide Mr. Excavator with a defense, but denying any obligation to defend or indemnify Mr. Excavator against an adverse verdict.

{¶ 4} After receiving notice of State Auto's denial of coverage as to the umbrella policy, Mr. Excavator sought leave of court on October 25, 2004, to file a third-party complaint for declaratory relief, negligence, breach of contract, and reformation against State Auto and its insurance agents, Robert J. Clark and Denmark Insurance Services, Inc. The trial court granted Mr. Excavator leave to file and State Auto answered the third-party complaint, denying coverage under the CGL and umbrella policies on December 10, 2004.

{¶ 5} On January 5, 2005, State Auto and Mr. Excavator submitted cross-motions for summary judgment on the coverage issues. The trial court, in its judgment entry and opinion dated May 26, 2005, determined that Mr. Excavator was entitled to coverage under the umbrella policy from the first dollar, but was not entitled to coverage under the CGL policy. State Auto filed a notice of appeal on June 24, 2005.

{¶ 6} Plaintiffs and Mr. Excavator moved to dismiss the appeal for lack of a final appealable order, which this court denied on July 25, 2005.

{¶ 7} Subsequently, on January 18, 2006, plaintiffs settled and dismissed with prejudice their action against Mr. Excavator. Accordingly, State Auto entered into a consent judgment in favor of Mr. Excavator, fixing damages for this appeal. Additionally, Mr. Excavator voluntarily dismissed the actions asserted in the third-party complaint against Robert J. Clark and Denmark Insurance Services, Inc.

{¶ 8} We, therefore, address State Auto's sole assignment of error, which states:

{¶ 9} "The trial court erred in denying, in part, State Automobile Mutual Insurance Company's Motion for Summary Judgment as no coverage for employer intentional tort claim is provided under the umbrella coverage issue to Mr. Excavator."

{¶ 10} We employ de novo review in determining whether summary judgment was properly granted. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241; *Zemcik v. LaPine Truck Sales & Equip. Co.* (1997), 124 Ohio App.3d 581, 585, 706 N.E.2d 860.

{¶ 11} Before summary judgment may be granted, a court must determine that "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." *State ex rel. Dussell v. Lakewood Police Dept.,* 99 Ohio St.3d 299, 2003-Ohio-3652, 791 N.E.2d 456, ¶ 6, citing *State ex rel. Duganitz v. Ohio Adult Parole Auth.,* 77 Ohio St.3d 190, 191, 672 N.E.2d 654; see Civ.R. 56(C).

{¶ 12} The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Zivich v. Mentor Soccer Club,* 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201. Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein,* 76 Ohio St.3d 383, 385, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg,* 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138.

{¶ 13} With these principles in mind, we proceed to consider State Auto's sole assignment of error. State Auto contends that the umbrella policy issued to Mr. Excavator did not provide coverage for plaintiffs' intentional-tort claim against Alvin McGuffin's employer. For the following reasons, we agree.

{¶ 14} When construing a contract of insurance, "Insurance policies are generally interpreted by applying rules of contract law. *Burris v. Grange Mut. Cos.* (1989), 46 Ohio St.3d 84, 89, 545 N.E.2d 83, 88. If the language of the insurance policy is doubtful, uncertain, or ambiguous, the language will be construed strictly against the insurer and liberally in favor of the insured. *Faruque v. Provident Life & Acc. Ins. Co.* (1987), 31 Ohio St.3d 34, 31 OBR 83,

508 N.E.2d 949. However, the general rule of liberal construction cannot be employed to create an ambiguity where there is none. *Karabin v. State Auto. Mut. Ins. Co.* (1984), 10 Ohio St.3d 163, 166–167, 10 OBR 497, 499–500, 462 N.E.2d 403, 406–407. If the terms of a policy are clear and unambiguous, the interpretation of the contract is a matter of law. *Inland Refuse Transfer Co. v. Browning–Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 15 OBR 448, 474 N.E.2d 271." *Progressive Ins. Co. v. Heritage Ins. Co.* (1996), 113 Ohio App.3d 781, 783–784, 682 N.E.2d 33.

{¶ 15} In *New Hampshire Ins. Group v. Frost* (1995), 110 Ohio App.3d 514, 674 N.E.2d 1189, this court held that "where an employer is the insured, an intentional tort committed by the employer against an employee results in injuries 'expected or intended from the standpoint of the insured.'" Id. at 518, 674 N.E.2d 1189. In *New Hampshire,* the insurer appealed from a declaratory judgment requiring it to provide coverage to an employer for liability arising under an employer intentional tort. In that case, the New Hampshire policy covered damages resulting from an "occurrence," which was defined in the policy as "an accident * * * which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." In finding that the New Hampshire policy did not provide coverage to the employer, we relied on *Wedge Prods., Inc. v. Hartford Equity Sales Co.* (1987), 31 Ohio St.3d 65, 31 OBR 180, 509 N.E.2d 74, which involved identical policy language as that proffered in the New Hampshire policy. Id. at 515, 674 N.E.2d 1189. We stated, "Wedge found an employer incapable of committing an intentional tort without expecting the injury to occur because to commit an intentional tort an employer must, at a minimum, commit acts with the belief that an employee was substantially certain to be injured." Id. We, therefore, determined that "where an employer is the insured, a finding of intent for purposes of an employer intentional tort necessarily means that the insured 'expected or intended' the injuries." Id. at 517, 674 N.E.2d 1189.

{¶ 16} Similarly, in *Altvater v. Ohio Cas. Ins. Co.,* Franklin App. No. 02AP–422, 2003-Ohio-4758, 2003 WL 22077728, the Tenth District found that a policy that excludes coverage for expected or intended acts excludes coverage for substantially certain injuries or acts. The court held:

{¶ 17} "Although the language in the present policies does not expressly exclude coverage for substantial-certainty employer intentional torts, as did the policy in *Penn Traffic* [*Co. v. AIU Ins. Co.,* 99 Ohio St.3d 227, 2003-Ohio-3373, 790 N.E.2d 1199], these policies do contain the same proscription against coverage for any bodily injury 'expected or intended.' Thus, we apply the following concepts from *Penn Traffic* to the present case: (1) where substantial certainty exists, intent to harm will be inferred as a matter of law, and (2) there is no coverage for substantial-certainty employer intentional torts where an insurance

policy excludes coverage for bodily injury 'expected or intended' from the standpoint of the insured." Id. at ¶ 16.

{¶ 18} As in *New Hampshire* and *Altvater*, we find that the State Auto umbrella policy in effect at the time of the incident excludes coverage for plaintiffs' substantial-certainty employer intentional-tort claim. The umbrella policy in this case contains language that is nearly identical to that in *New Hampshire* and *Altvater*. The policy excludes coverage for " 'Bodily injury' or 'property damage' *either expected or intended from the standpoint of the insured."* (Emphasis added.) Accordingly, because the umbrella policy language excludes coverage for injuries "expected or intended," the policy necessarily excludes coverage for plaintiffs' substantial-certainty employer intentional-tort claim. Therefore, we find merit in State Auto's sole assignment of error.

{¶ 19} Because we find that no coverage exists for Mr. Excavator under State Auto's umbrella policy, we find that State Auto's remaining arguments asserting no coverage are moot.

{¶ 20} We next address plaintiffs' and Mr. Excavator's assertions that State Auto waived any coverage defenses. Plaintiffs and Mr. Excavator maintain that although State Auto made a timely reservation of rights as to the CGL policy, it did not reserve its rights under the umbrella policy until two years after plaintiffs filed suit. Therefore, as a result of State Auto's failure to reserve its rights under the umbrella policy, it has waived and is estopped from asserting any coverage defenses. We disagree.

{¶ 21} "Because an excess insurer has no duty to defend its insured, it cannot later be estopped from raising coverage defenses, or be said to have waived those defenses, if it fails to reserve its rights when notified of a claim or suit potentially implicating its coverage. It is, after all, an insurer's duty to defend which compels it to reserve its rights, and without a duty to defend, an excess insurer has no obligation to issue a reservation of rights letter." Richmond, Rights and Responsibilities of Excess Insurers (2000), 78 Denv.U.L.Rev. 29, 49–50 (Footnotes omitted.)

{¶ 22} In the instant matter, the CGL policy provided for a duty to defend and, thus, a duty to reserve its rights. The umbrella policy, however, as an excess policy, did not have a duty to defend. Accordingly, State Auto did not have a duty to reserve its rights under the umbrella policy and is not estopped from asserting its coverage defenses under that policy. Therefore, State Auto's sole assignment of error is sustained, and we reverse the trial court's judgment to the extent that it found coverage under the State Auto umbrella policy.

Judgment reversed.

GALLAGHER and BLACKMON, JJ., concur.